IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**TUDOR INSURANCE COMPANY,**

      Plaintiff,

v.                                                                                           Civil Action No. 5:12-CV-35
                                                                                             (BAILEY)

**QUICKEN LOANS, INC,
DAVID CLINE,
ANNA CLINE,
TITLE SOURCE, INC. d/b/a
TITLE SOURCE, INC. OF WEST VIRGINIA,
APPRAISALS UNLIMITED, INC.,
DEWEY V. GUIDA, and
JOHN DOE NOTE HOLDER,**

      Defendants.

## MEMORANDUM OPINION AND ORDER
## ABSTAINING FROM HEARING DECLARATORY ACTION

      Pending before this Court are defendants Appraisals Unlimited, Inc.'s and Dewey V. Guida's Motion to Dismiss [Doc. 22], filed May 25, 2012, and defendants David Cline's and Anna Cline's Motion to Dismiss or Stay [Doc. 27], filed June 8, 2012.  These motions have since been fully briefed and are now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that the motions to dismiss should be **GRANTED**.

**BACKGROUND**

I.  **Factual Allegations**

    A.  **Underlying State Court Action**

In June 2005, David and Anna Cline visited the website lendingtree.com for the purpose of consolidating multiple credit card obligations. Thereafter, Quicken Loans, Inc. ("Quicken") repeatedly called the Clines and convinced them that refinancing their home loan and securing previously unsecured debt was in their best interest.

Quicken subsequently directed its appraisal management company, Title Source, Inc. d/b/a Title Source, Inc. of West Virginia ("Title Source"), to obtain an appraisal on the Clines' home. The July 12, 2005, appraisal, completed by a local appraiser named Dewey V. Guida of Appraisals Unlimited, Inc. ("Appraisals Unlimited"), represented that the value of the home was $112,000. Based upon the appraisal, Quicken originated the Clines' loan on August 11, 2005, in the amount of $99,300. The Clines subsequently struggled to make their regular monthly payments and have fallen behind on their loan. The Clines have since discovered that the true market value of their home was about $80,000.

On April 22, 2010, Guida executed a premium finance agreement (the "Agreement") with Premium Financing Specialists Corp. ("Premium Financing"), to finance the payment of premiums on a professional liability insurance policy (the "Policy") issued by Tudor Insurance Company ("Tudor"). Pursuant to the Agreement, Guida "irrevocably appoint[ed] [Premium Financing] attorney-in-fact of the insured with full power of substitution and full authority upon default to cancel [the Policy.]"

On January 18, 2011, Premium Financing sent Tudor a Notice of Cancellation

purporting to give Tudor consent to cancel the Policy effective January 21, 2011, despite the fact that the Agreement required Premium Financing to provide Guida with ten days notice of its intent to cancel the Policy. Tudor cancelled the Policy as of January 21, 2011.

### B.   Instant Declaratory Action

Tudor issued the above-referenced Policy to Guida for the policy period April 25, 2010, to April 25, 2011. The Policy includes coverage limits of $1,000,000 per claim, with aggregate limits of $1,000,000, subject to a $5000 per claim deductible.

The insuring clause of the Policy provides that Tudor "will pay on behalf of [Guida] all sums in excess of the deductible that [Guida] shall become legally obligated to pay as damages," on the condition that any "claim is first made against [Guida] and reported to [Tudor] during the policy period." (Policy at § I, ¶ A). Guida could cancel the Policy "by mailing to [Tudor] written notice stating when thereafter such cancellation shall be effective." (Id. at § VII, ¶ C). Pursuant to this latter provision, Tudor cancelled the Policy effective January 21, 2011, based upon the Notice of Cancellation sent by Premium Financing three days earlier as a result of Guida's default. Guida responded by curing his default with Premium Financing and requesting reinstatement of the Policy. On January 24, 2011, Premium Financing sent Tudor and Guida a Notice of Request for Reinstatement.

As a message to Tudor, Premium Financing stated:

[Premium Financing] cancelled the [Policy] on the cancellation date indicated because of the default of the insured. The insured's account is now current. The insured would appreciate reinstatement of the [Policy]. Only the insurance company can reinstate cancelled policy(s). Please immediately advise the insured, his agent and [Premium Financing] if the [Policy] will be reinstated, or will remain cancelled.

As a message to Guida, Premium Financing stated:

> THE POLICIES LISTED ABOVE ARE CANCELLED AND ARE NOT IN FULL FORCE UNTIL THE INSURANCE COMPANY ADVISES YOU TO THE CONTRARY. ONLY THE INSURANCE COMPANY CAN REINSTATE YOUR POLICIES. IF YOU ARE NOT ADVISED PROMPTLY CONTACT YOUR INSURANCE AGENT. IF YOUR INSURANCE COVERAGE IS NOT REINSTATED, ALL PAYMENTS MADE FOLLOWING CANCELLATION WILL BE CREDITED TO YOUR ACCOUNT. THE FACT THAT YOU CONTINUE TO MAKE PAYMENTS TO [PREMIUM FINANCING] DOES NOT MEAN YOUR INSURANCE IS IN FORCE. ONLY THE INSURANCE COMPANIES OR YOUR AGENT CAN ADVISE YOU AS TO THE STATUS OF YOUR INSURANCE COVERAGE.

Tudor did not reinstate the Policy and instead returned the most recent premium to Premium Financing on May 4, 2011, for return to Guida. As such, the Policy remained cancelled as of January 21, 2011.

## II.  Procedural History

### A.  State Court History Prior to Federal Declaratory Action

On March 15, 2011, the Clines filed suit in the Circuit Court of Marshall County, West Virginia, naming Quicken, Title Source, Appraisals Unlimited, Guida (who had filed bankruptcy on March 3, 2011), and John Doe Note Holder. The original Complaint contained nine causes of action.

Count I is a claim for unconscionable conduct arising under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-101, *et seq.*, based upon the allegation that Guida and others unconscionably induced the Clines into the refinance loan by an inflated appraisal. Count II asserts that Quicken breached its

fiduciary duty as a lender which offers financial advice by, *inter alia*, recommending that the Clines increase their home mortgage indebtedness beyond the fair market value of their home. Counts III and IV are generally alleged causes of action for fraudulent or intentional misrepresentation and negligent misrepresentation, respectively. Count V asserts that the Clines' loan is illegal pursuant to the West Virginia Residential Mortgage Lender, Broker, and Servicer Act ("WV Lender, Broker, and Servicer Act") because it contains a principal amount that exceeded the fair market value on the date of origination. Count VI claims that Appraisals Unlimited and Guida violated the West Virginia Real Estate Appraiser Licensing and Certification Act ("WV Appraiser Act"), W.Va. Code § 30-38-1, *et seq.*, by making the allegedly inflated appraisal with the intent to substantially benefit themselves or another and to substantially injure the Clines. The same count alleges that Appraisals Unlimited and Guida breached the standards of professional appraisal practice as defined in the WV Appraiser Act by making the allegedly inflated appraisal. Counts VII and IX are claims for compensatory and punitive damages, respectively. Count VIII alleges that all of the defendants acted in the furtherance of a joint venture

     On March 23, 2011, Guida tendered his defense in the underlying state action to Tudor. By letter dated April 5, 2011, Tudor agreed to defend Guida under a reservation of rights under the Policy. Specifically, Tudor reserved its rights under the Policy to seek a judicial declaration of the parties' rights and obligations under the Policy, rely upon the January 21, 2011, cancellation, and withdraw from Guida's defense if a court determines that there is no coverage under the Policy.

     On April 29, 2011, Quicken and Title Source removed the state action to this Court, pursuant to 28 U.S.C. §§ 1452(a) and 1334(b), asserting that the matter was a civil

proceeding related to Guida's bankruptcy case. Upon the Clines' motion, the Honorable Frederick P. Stamp, Jr., remanded the action to state court on July 5, 2011, because, *inter alia*, abstention was mandated by 28 U.S.C. § 1334(c)(2). Upon remand, Tudor and Title Source moved to dismiss the original Complaint. Briefing for the motion was completed on January 17, 2012. The state court heard argument on the motion on February 17, 2012. The motion is currently under advisement.

### B. Commencement of Federal Declaratory Action

On March 7, 2012, Tudor filed the instant declaratory action in this Court, pursuant to 28 U.S.C. § 2201, naming all of the parties to the state action [Doc. 3]. The Complaint for Declaratory Judgment seeks the following six declarations: (1) Guida was properly informed of the terms and conditions of the Policy; (2) there is no coverage under the Policy because the claim was reported after the Policy had been cancelled; (3) there is no coverage under the Policy; (4) Tudor has no duty to defend or indemnify Guida for any verdict, judgment, or settlement reached in the state action; (5) Tudor may suspend its defense of Guida in the state action; and (6) Tudor owes no further obligations to Guida under the Policy.

### C. Interplay between Federal and State Actions

More than a month after the commencement of the instant action, the Clines moved the state court on April 19, 2012, for leave to file an Amended Complaint, which the court granted the next day. The Amended Complaint, filed April 27, 2012, joins Tudor as a defendant and adds a cause of action for declaratory relief that mirrors Tudor's federal claims for declaratory relief (Count X). On April 30, 2012, Tudor moved the state court to reconsider its decision to grant the Clines' leave to amend or, alternatively, to stay

consideration of the Clines' claims for declaratory relief in light of its federal declaratory action, a motion that the state court subsequently denied on June 14, 2012. On June 13, 2012, Guida filed an Answer to the Amended Complaint, which included crossclaims against Tudor arising from its cancellation of the Policy and joined Premium Financial to assert third-party claims arising from their Agreement and its involvement in the cancellation of the Policy. On July 9, 2012, the state court ordered that a pretrial conference be held on July 26, 2012.

Meanwhile, on May 25, 2012, Appraisals Unlimited and Guida (collectively "Guida") filed the instant Motion to Dismiss [Doc. 22], arguing that the Court should abstain from exercising its jurisdiction to grant the declaratory relief requested in this action. In support of the motion, Guida asserts that: (1) the State of West Virginia has a stronger interest because Tudor's claims for declaratory relief will require the interpretation and application of West Virginia state law; (2) the issues raised can be resolved more efficiently in the pending state court proceeding, which involves all necessary parties and has been pending since March 2011; (3) permitting the federal action to proceed will result in unnecessary entanglement between this Court and the state court due to overlapping issues of fact and law now that the state action includes identical claims for declaratory relief, and (4) the federal action is being used merely as a device for procedural fencing. On June 8, 2012, the Clines filed the instant Motion to Dismiss or Stay [Doc. 27], asserting similar arguments in support of abstention.

On June 13, 2012, Tudor filed a Memorandum in Opposition [Doc. 28] to Guida's motion, arguing that the Court should exercise its jurisdiction to hear the requests for declaratory relief. First, because determining whether the Policy was in effect does not

present a difficult, complex, or unsettled question of state law, Tudor claims that the State of West Virginia does not have such a significant interest to weigh in favor of abstention. Second, Tudor contends that the defendants cannot argue that the state court is the more efficient forum because it has yet to give any consideration to the coverage issues just recently raised by the Amended Complaint. Third, Tudor argues that there no risk of entanglement because this Court need not reach any issues of liability in determining coverage. Finally, Tudor asserts that its involvement in the state action is a direct result of the Clines' procedural fencing. On June 22, 2012, Tudor filed a brief opposing the Clines' motion to dismiss for the same reasons [Doc. 30].

On June 29, 2012, the Clines' filed a Reply [Doc. 32], supplementing their previous arguments in support of abstention. For example, the Clines contend that concerns of efficiency and entanglement weigh strongly in favor of abstention in light of the recent crossclaims and third-party claims that Appraisal Unlimited and Guida filed in state court. In addition, the Clines argue that resolution of Tudor's claim for a declaration that the Policy was cancelled will require this Court to address a difficult, complex, and unsettled question of state law, i.e., whether a power of attorney permitting cancellation of an insurance policy is enforceable in West Virginia.

## DISCUSSION

**I.**     ***Colorado River / Wilton* Abstention**

As a starting point, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." ***Colorado River Water Conservation Dist. v. United States***, 424 U.S. 800, 817 (1976). The ***Colorado River*** Court noted that "the pendency

of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction," *Id.* at 817, and that a district court may decline to exercise its jurisdiction only under "exceptional circumstances." *Id.* at 813.  However, since 1995, it has been clear that a district court need not be faced with "exceptional circumstances" to stay or dismiss duplicative litigation in the declaratory judgment context.  ***Wilton v. Seven Falls Co.***, 515 U.S. 277 (1995); ***Gatewood Lumber, Inc. v. Travelers Indemnity Co.***, 898 F.Supp. 364 (S.D. W.Va. 1995).  The ***Wilton*** Court offered the following explanation:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.  Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.  In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

***Wilton***, 515 U.S. at 288 (footnote omitted).

Since the ***Wilton*** decision, the Fourth Circuit has articulated four factors for district courts to consider "[t]o determine whether to proceed with a federal declaratory judgment action when a parallel state court action is pending":

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.

***Great Am. Ins. Co. v. Gross***, 468 F.3d 199, 211 (4th Cir. 2006) (citing ***Nautilus Ins. Co. v. Winchester Homes, Inc.***, 15 F.3d 371, 376 (4th Cir. 1994).

9

II.     **Analysis**

The Clines argue that this Court should abstain from exercising its jurisdiction over Tudor's requests for declaratory relief. After weighing the four ***Nautilus*** factors, this Court agrees.

A.      **West Virginia's Interest**

First, this Court concludes that the State of West Virginia has a compelling interest in having its courts decide the particular issues raised by certain of Tudor's claims for declaratory relief.

That the instant declaratory action will be governed by the substantive law of the State of West Virginia "alone provides no reason for declining to exercise federal jurisdiction." ***Nautilus***, 15 F.3d at 378. Instead, a federal court may exercise its discretion to abstain "only when the questions of state law involved are difficult, complex, or unsettled." ***Id.*** (citations omitted).

Here, this Court is unpersuaded that resolution of certain of Tudor's claims for declaratory relief will not involve questions of state law that are difficult, complex, or unsettled.

For example, Tudor seeks a declaration that there is no coverage under the Policy because the claim was reported after the Policy had been cancelled. As the Clines argue, resolution of this claim would require this Court to determine whether the power of attorney permitting Premium Financing to cancel the Guida-Tudor Policy is enforceable. This question appears unsettled, as this Court has been unable to locate a West Virginia case addressing the enforceability of this kind of agreement. As such, this Court is of the opinion

that this issue is more properly addressed by a state court. This factor, therefore, weighs in favor of abstention.

### B.     Efficiency

As to the second factor, this Court concludes that the issues raised by the Complaint for Declaratory Judgment can be resolved more efficiently in West Virginia state courts.

In evaluating efficiency concerns, a district court should focus on "'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceedings' that are already 'pending in the state courts.'" **Nautilus**, 15 F.3d at 378 (quoting **Brillhart v. Excess Ins. Co.**, 316 U.S. 491, 495 (1942)). In the Fourth Circuit, this question requires a "careful inquiry into 'the scope of the pending state court proceeding' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in [the state] proceeding . . ..'" **Nautilus**, 15 F.3d at 378-379 (quoting **Brillhart**, 316 U.S. at 495).

After examining the scope of the pending state proceedings, this Court concludes that the claims of all parties in interest to this action can satisfactorily be adjudicated in the state action. Currently, the state action contains the same coverage issues presented here as well as liability issues not present in this action, suggesting that the state action would be more efficient in resolving the rights of all interested parties. Importantly, those liability issues have been before the state court since March 2011. That the coverage issues were just recently added in April 2012 has no effect on efficiency. In fact, the Supreme Court of Appeals of West Virginia has permitted a plaintiff in a personal injury action pending in West Virginia state court to amend her complaint to add a count for declaratory judgment

against an insurer to determine its liability under the defendant's insurance policy after the insurer initiated a declaratory judgment action in federal court on the question of its liability under the insurance policy. See **Christian v. Sizemore**, 181 W.Va. 628, 383 S.E.2d 810 (1989). The court reasoned that "[p]ermitting an adjudication of the respective rights and duties of the parties in the same proceeding as the underlying tort action . . . enhances judicial economy by avoiding multiple lawsuits and the possibility, as here, of separate proceedings in different courts." *Id.* at 814; accord **W.Va. Ins. Co. v. Lambert**, 193 W.Va. 681, 458 S.E.2d 774, 777 (1995). In addition, the state proceeding is the only action to which Premium Financing has been joined. The actions of Premium Financing, and its authority to take those actions, will be integral to the resolution of the coverage issues presented here. As such, because the current procedural posture of the state litigation will lead to the resolution of both issues of liability and coverage, this Court concludes that the state court is the more efficient forum for the declaratory relief sought here.

    **C.**    **Entanglement**

The next factor asks whether allowing this action to proceed would result in unnecessary entanglement between the federal and state court systems based on the presence of "overlapping issues of fact or law." **Nautilus**, 15 F.3d at 377 (quoting **Mitcheson v. Harris**, 955 F.2d 235, 239 (4th Cir. 1992).

In light of the Clines' Amended Complaint, the West Virginia case will involve litigation of the same issues of insurance coverage that this Court has been asked to resolve. Specifically, in undertaking to determine whether Tudor has a duty to indemnify Guida, this Court would be required to resolve certain questions of law presented by the

Amended Complaint in the state court action, such as whether the power of attorney permitting Premium Financing to cancel the Policy is enforceable and, even if so, whether Premium Financing provided proper notice of the cancellation to Guida. As such, the certainty of entanglement weighs in favor of abstention.

### D.   Procedural Fencing

Finally, the sequence of events leading to these parallel proceedings indicates that the instant declaratory action may have been used as a form of procedural fencing. When Tudor sought declaratory relief in this Court, the underlying state action was already pending in state court for nearly one year. Moreover, the record is clear that Tudor has had notice of that pending action since March 2011, when Guida asked the insurer to defend him. In fact, Tudor has been defending Guida in the state action since April 2011. While the issues of coverage were not technically before the state court when Tudor filed this action, the insurer already knew that the coverage issues were bound to arise during the course of those proceedings. Given the pendency of the state proceedings and the inevitability of Tudor's involvement in those proceedings, this Court concludes that the filing of this action may have constituted procedural fencing. *Accord* **Cont'l Cas. Co. v. Fuscardo**, 35 F.3d 963, 968 (4th Cir. 1994).

Therefore, applying the four **Nautilus** factors to the instant case, this Court is persuaded, in its discretion, to abstain from exercising jurisdiction over the instant declaratory action.

## **CONCLUSION**

For the foregoing reasons, this Court concludes that Appraisals Unlimited, Inc.'s and Guida's Motion to Dismiss **[Doc. 22]** and the Clines' Motion to Dismiss or Stay **[Doc. 27]** should be, and hereby are, **GRANTED**. Accordingly, this Court hereby **DISMISSES WITH PREJUDICE** Tudor's Complaint for Declaratory Judgment **[Doc. 3]**. Finally, the Clerk is directed to **CLOSE** this case and **STRIKE** this civil action from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** July 13, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE